**Opinion filed July 30, 2026**



In The

# Eleventh Court of Appeals

_____

## No. 11-25-00168-CV

_____

### ARIELLA FUCHS, Appellant

### V.

### SAVANNA DRILLING LLC, Appellee

**On Appeal from the 142nd District Court**
**Midland County, Texas**
**Trial Court Cause No. CV60823**

## O P I N I O N

In this appeal, we address the scope and reach of a Texas trial court's exercise of personal jurisdiction over a nonresident.

Here, Appellant, Ariella Fuchs, appeals from the trial court's final judgment in the underlying suit filed by Appellee, Savanna Drilling LLC (Savanna), in which Savanna claimed that Fuchs was personally liable for a corporate debt for certain goods and services that Savanna provided to Ruckus Energy Operating LLC

(Ruckus Operating). Fuchs filed a special appearance, which the trial court denied. Savanna later moved for and obtained summary judgment against Fuchs and other defendants who are not parties to this appeal—Ruckus Operating, Ruckus Energy Resources, LLC (Ruckus Resources), Ruckus Energy Holdings, LLC (Ruckus Holdings), and Ruckus Energy Intermediate Holdings, LLC (Ruckus Intermediate), collectively referred to as "Ruckus Energy"—for the outstanding debt.

Fuchs raises two issues on appeal that include multiple-sub issues. First, she argues that the trial court erred when it denied her special appearance and enforced personal jurisdiction over her in Texas. Second, she argues that the trial court erred when it found her personally liable for Ruckus Energy's corporate debt pursuant to Section 171.255 of the Tax Code and granted summary judgment on this claim in favor of Savanna. *See* TEX. TAX CODE ANN. § 171.255(a) (West 2015). For the reasons discussed below, we reverse and render.

## I. *Factual Background*

Fuchs is a resident of New York and a licensed attorney in that state. She served in multiple executive roles within the Ruckus Energy corporate umbrella, including as president and general counsel for Ruckus Operating and Ruckus Resources. Although Fuchs's role in Ruckus Holdings was not alleged by Savanna in its original or amended pleading, Fuchs stated in her sworn declaration that was attached to her special appearance that she was also the president and general counsel for Ruckus Holdings. Ruckus Operating and Ruckus Resources were each formed in Delaware and have a principal office in Texas.

On February 17, 2022, Fuchs, in her representative capacity as "Co-CEO" of Ruckus Operating, signed a contract with Savanna whereby Savanna agreed to provide certain goods and services to Ruckus Operating that were related to oil and gas operations in Texas. However, Ruckus Operating did not pay Savanna for the goods and services that it provided to Ruckus Operating in accordance with the

2

contract.[1]  As a result, Savanna sued Ruckus Operating for breach of contract, obtained a final judgment against it, and, in July 2023, abstracted the judgment.[2]

On July 28, 2023, Ruckus Operating and Ruckus Resources forfeited their corporate privileges in Texas.  *See* TAX §§ 171.302, .309.  During the forfeiture period, Ruckus Resources, Ruckus Operating, and Savanna negotiated a Settlement, Forbearance, and Release Agreement (the Forbearance Agreement) for the payment of the outstanding corporate debt that arose from the 2022 contract.  According to the terms of the Forbearance Agreement, the parties agreed that Ruckus Operating and Ruckus Resources, acting collectively, would pay Savanna $1,169,683 over nine installments in exchange for Savanna releasing its claims against Ruckus Operating and Ruckus Resources.  Fuchs signed the Forbearance Agreement, which became effective on September 19, on behalf of Ruckus Operating and Ruckus Resources in her representative capacity as president and general counsel for each entity.  Days later, Ruckus Operating and Ruckus Resources cured their default and filed applications to reinstate their corporate privileges in Texas.

Ruckus Operating did not pay the debt that it owed to Savanna in accordance with the Forbearance Agreement, and Savanna filed the underlying suit on May 1, 2024.  In the suit, the only claim that Savanna asserted against Fuchs in her individual capacity was for forfeiture liability under Sections 171.252 and 171.255 of the Tax Code.  *See* TAX §§ 171.252, .255.

In its amended petition, Savanna alleged that the trial court could exercise personal jurisdiction over Fuchs because she "purposefully availed [herself] of the

---

[1]The last invoice for goods and services provided by Savanna that it sent to Ruckus Operating was in August 2022.

[2]The total amount of the judgment owed by Ruckus Operating to Savanna was $1,029,474.84, excluding any applicable postjudgment or per annum interest.

privilege of conducting activities in Texas, and [that] Savanna's claims against [Fuchs] likewise arise out of or relate to those contacts." Specifically, Savanna alleged that Fuchs was subject to personal jurisdiction in Texas because: (1) she was involved in the preparation, approval, execution, and subsequent breach of the Forbearance Agreement; (2) Ruckus Operating and Ruckus Resources were parties to the Forbearance Agreement; (3) she was at all relevant times an affiliate or agent of Ruckus Resources and Ruckus Operating and thus was bound by the Forbearance Agreement's forum-selection clause; and (4) she was the president of Ruckus Resources and Ruckus Operating when both entities signed the Forbearance Agreement.

Additionally, Savanna alleged that Fuchs was subject to personal jurisdiction in Texas by "consent" based on two theories. First, Savanna alleged that Fuchs consented to personal jurisdiction in Texas under the Tax Code, because she was responsible for "the day-to-day operations" of Ruckus Operating and Ruckus Resources and knew or should have known that those entities' corporate privileges were forfeited when the Forbearance Agreement was signed. Second, Savanna alleged that, because Fuchs was an affiliate or agent of Ruckus Resources and Ruckus Operating, she was thus bound by—and therefore consented to jurisdiction under—the Forbearance Agreement's forum-selection clause, which stated that it was "binding upon . . . each of the [entities'] respective successors, assigns, . . . *affiliates, [and] agents*." (Emphasis added).

On May 31, 2024, Ruckus Holdings and Fuchs filed a special appearance contesting the trial court's exercise of personal jurisdiction over them; Fuchs' sworn declaration was attached.[3] In her declaration, Fuchs stated that: (1) she was a resident of New York; (2) she did not personally own any property in Texas; (3) she

---

[3]Fuchs later amended her special appearance on September 9, 2024.

4

did not maintain any bank account in Texas; (4) she had not personally conducted business in Texas; (5) she had not personally maintained any office in Texas; and (6) she was the president and general counsel for Ruckus Operating, Ruckus Resources, and Ruckus Holdings. Savanna filed a response to Fuchs's motion, alleged additional facts, and attached documents in support (a portion of which was not certified or self-authenticating) that were neither alleged nor referenced in either its original or amended petitions. *See* TEX. R. EVID. 902, 1005. On September 27, the trial court signed an order denying Fuchs's special appearance without issuing findings of fact or conclusions of law.[4]

On December 18, 2024, Savanna filed a motion for summary judgment, which the trial court granted on Savanna's claims for breach of contract and forfeiture liability against Fuchs.[5] Fuchs filed a motion for new trial and motion to set aside the final judgment, which the trial court also denied. This appeal followed.

## II. *Standard of Review*

We review a trial court's denial of a special appearance de novo. *M & F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co., Inc.*, 512 S.W.3d 878, 885 (Tex. 2017). The existence of personal jurisdiction is a question of law, which must sometimes be preceded by the resolution of underlying factual disputes. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *Virtual Healthcare Servs., Ltd. v. Laborde*, 193 S.W.3d 636, 642 (Tex. App.—Eastland 2006, no pet.). In considering the denial of a special appearance, we review a trial

---

[4]The trial court's order also denied Ruckus Holdings's special appearance. Additionally, on August 2, 2024, Ruckus Operating filed responses to Savanna's requests for admission admitting that it failed to pay, and lacked the funds necessary to pay, Savanna for the amounts awarded to Savanna in the June 2023 judgment and agreed to in the Forbearance Agreement. Ruckus Resources also filed an answer acknowledging this.

[5]In its final judgment, the trial court awarded $1,169,683 to Savanna against all defendants, which included prejudgment interest at 18% per annum.

court's findings on disputed factual issues for both legal and factual sufficiency, and we consider all the evidence in the record. *BMC Software*, 83 S.W.3d at 794.

When the underlying facts are undisputed or otherwise established, we conduct a de novo review of the trial court's order as a matter of law. *Id.*; *Goodenbour v. Goodenbour*, 64 S.W.3d 69, 75 (Tex. App.—Austin 2001, pet. denied); *Preussag Aktiengesellschaft v. Coleman*, 16 S.W.3d 110, 113 (Tex. App.—Houston [1st Dist.] 2000, pet. dism'd w.o.j.), *cert. denied*, 536 U.S. 923 (2002). However, when, as here, the trial court does not issue findings of fact and conclusions of law, we presume that all factual disputes were resolved in favor of the trial court's decision *unless* they are challenged on appeal. *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 8 (Tex. 2021) (citing *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002)); *see Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam).

### III. *Analysis*

As stated above, Fuchs has raised several issues on appeal. However, we need only address the merits of her first issue because it is dispositive of this appeal.[6] *See* TEX. R. APP. P. 47.1.

#### A. *Preservation of Error*

As an initial matter, we note that Savanna argues that Fuchs did not preserve her jurisdictional complaint for appellate review because she did not challenge all independent grounds that support the trial court's denial of her special appearance. Specifically, Savanna contends that (1) the trial court could have denied Fuchs's special appearance on procedural grounds—because Fuchs did not properly verify

---

[6]Additionally, we will limit any discussion of Section 171.255 of the Tax Code to our analysis of the jurisdictional issues raised by Fuchs. *See* TEX. R. APP. P. 47.1.; TAX § 171.255(a).

the facts alleged in her sworn declaration that she attached to her original special appearance—and (2) her failure to plead this issue waived this complaint.

Irrespective of Savanna's contentions, Fuchs's amended sworn declaration, which was attached to her amended special appearance, cured any technical defects that existed in her original sworn declaration, included additional verification language, and was filed prior to the trial court's ruling that denied her special appearance.[7] *See* TEX. R. CIV. P. 120a ("Such special appearance shall be made by sworn motion filed prior to . . . any other plea, pleading or motion . . . *and may be amended to cure defects.*" (emphasis added)). Therefore, Fuchs's complaints were preserved for our review. *See also Exito Elecs. Co., Ltd. v. Trejo*, 142 S.W.3d 302, 307 (Tex. 2004) (An unverified special appearance does not concede jurisdiction where other information exists in the record, such as the pleadings or the deposition of a corporate representative.); *Dawson-Austin v. Austin*, 968 S.W.2d 319, 322 (Tex. 1998) (An amendment to an unsworn special appearance may be filed at any time before the entry of a general appearance.).

B. *Personal Jurisdiction*

To render a binding decision, a trial court must possess personal jurisdiction over the parties to the case. *CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996). Texas courts may assert jurisdiction over a nonresident if "(1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees." *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007) (citing *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356 (Tex. 1990)); *see Moncrief Oil Int'l Inc. v. OAO*

---

[7]Paragraph six of Fuchs's amended sworn declaration stated, "I have read the special appearance and amended special appearance and verify that the facts within it are true, correct, or within my personal knowledge."

*Gazprom*, 414 S.W.3d 142, 149 (Tex. 2013); *see also BMC Software*, 83 S.W.3d at 795.

Under the Texas long-arm statute, a trial court may exercise personal jurisdiction over a nonresident defendant who engages in acts "that may constitute doing business" in Texas. TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (West 2015); *Broussard v. IPSCO Tubulars, Inc.*, 641 S.W.3d 805, 810 (Tex. App.—Eastland 2022, no pet.). The broad "doing business" language in the Texas long-arm statute allows a trial court's jurisdiction to "reach as far as the federal constitutional requirements of due process will allow." *Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 657 (Tex. 2010) (quoting *Moki Mac*, 221 S.W.3d at 575); *see also Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991). Therefore, "if an assertion of jurisdiction accords with federal due-process limitations," the Texas long-arm statute authorizes the exercise of such jurisdiction. *Moki Mac*, 221 S.W.3d at 575.

Pursuant to federal due-process requirements, personal jurisdiction is proper when the nonresident defendant has established minimum contacts with the forum state, and the exercise of personal jurisdiction comports with the "traditional notions of fair play and substantial justice." *Moki Mac*, 221 S.W.3d at 575 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Minimum contacts give rise to personal jurisdiction when the nonresident defendant "purposefully avails [herself] of the privilege of conducting activities within the forum State," thereby "invoking the benefits and protections of its laws." *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)); *Grand Aerie Fraternal Order of Eagles v. Haygood*, 402 S.W.3d 766, 773 (Tex. App.—Eastland 2013, no pet.).

Whether jurisdiction is general or specific depends on the nonresident's forum-state contacts. *Luciano*, 625 S.W.3d at 8; *see BMC Software*, 83 S.W.3d at

8

796.  Because Savanna has conceded that general jurisdiction is inapplicable to this case, we only address the application of the specific jurisdiction principles.

In the specific jurisdiction context, "purposeful availment alone will not support" the exercise of personal jurisdiction. *Moki Mac*, 221 S.W.3d at 579. Rather, purposeful availment "has no jurisdictional relevance unless the [nonresident] defendant's liability arises from or relates to the forum contacts." *Id.* There are "two co-equal components" of the specific jurisdiction analysis: whether (1) the nonresident defendant has purposefully availed herself of the privilege and benefits of doing business within the forum state, and (2) her alleged liability arises from or is related to an activity conducted by her within the forum state; both components must be satisfied to establish specific jurisdiction. *See id.* at 576, 579, 585 (adopting the "substantial connection" test for analyzing the second component of specific jurisdiction in Texas).

With respect to the relatedness component of specific jurisdiction, our jurisdictional analysis focuses on the relationship between the defendant, her contacts with Texas, and the pending litigation. *Moki Mac*, 221 S.W.3d at 575–76. To support the exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation. *Id.* at 575. If the plaintiff fails to plead facts that bring the defendant within the scope and reach of the Texas long-arm statute, the defendant may negate jurisdiction simply by proving that she is not a Texas resident. *Kelly*, 301 S.W.3d at 658–59; *Steward Health Care Sys. LLC v. Saidara*, 633 S.W.3d 120, 126 (Tex. App.—Dallas 2021, no pet.) (en banc).

## C.  *Special Appearance*

In her first issue, Fuchs asserts that the trial court erred when it denied her special appearance and subjected her to personal jurisdiction in Texas because: (1) she did not engage in sufficient minimum contacts with Texas to support the

exercise of specific, personal jurisdiction; (2) she was neither a party to the Forbearance Agreement nor sued in her capacity as an "agent" for Ruckus Operating and Ruckus Resources; therefore, she was not bound by the Forbearance Agreement's forum-selection clause; (3) she did not consent to personal jurisdiction in Texas under Section 171.255(a) of the Tax Code; and (4) the assertion of personal jurisdiction over her in Texas offends the traditional notions of fair play and substantial justice.

At the outset, the parties dispute whether Savanna alleged sufficient facts in its pleadings to support the trial court's exercise of specific, personal jurisdiction over Fuchs in Texas. As discussed below, we conclude that Savanna did not. First, Savanna failed to plead sufficient facts that would bring Fuchs within the scope and reach of the Texas long-arm statute based on her limited, individualized contacts with the State. Second, Fuchs established that she is a nonresident of Texas, she did not have sufficient personal contacts with Texas, and the claims that Savanna asserted against her do not arise from any personal contacts that she had with Texas. Finally, even if we considered Savanna's bare jurisdictional allegations, they do not support the exercise of specific, personal jurisdiction over Fuchs simply because she signed the Forbearance Agreement as an "agent" of Ruckus Operating and Ruckus Resources while those entities were in forfeiture.

1. *Savanna's Pleadings*

In a special appearance scenario, the plaintiff bears the initial burden of pleading sufficient allegations and facts to bring a nonresident defendant within the provisions and reach of the Texas long-arm statute. Civ. Prac. & Rem. §§ 17.041–.045; *BMC Software*, 83 S.W.3d at 793. This minimum pleading requirement is satisfied by alleging facts showing that the defendant either conducted business or committed tortious acts in Texas. *Saidara*, 633 S.W.3d at 126; *see also* Civ. Prac.& Rem. § 17.042.

10

If the plaintiff meets its pleading burden, and upon the filing of a special appearance, the burden shifts to the nonresident defendant to negate all possible grounds for personal jurisdiction on either a factual or legal basis. *Kelly*, 301 S.W.3d at 658; *BMC Software*, 83 S.W.3d at 793; *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 203 (Tex. 1985). Factually, the defendant may present evidence that she has no contact with Texas, which effectively negates the plaintiff's allegations; the plaintiff may then respond with evidence that supports the allegations raised in its pleadings. *Kelly*, 301 S.W.3d at 658. Legally, the defendant may show that even if the plaintiff's allegations are true, the evidence is legally insufficient to establish personal jurisdiction. *Id.* "Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading." *Id.*

Fuchs asserted in her amended special appearance that Savanna failed to meet its burden of pleading sufficient factual allegations to invoke personal jurisdiction over her under the Texas long-arm statute. Savanna argues that we must look to its pleadings, including its response to Fuchs's amended special appearance, and accept any jurisdictional facts that it alleged to support the trial court's decision which Fuchs did not negate. To this point, Savanna had the initial burden of pleading sufficient allegations and facts to bring Fuchs within the scope and reach of the Texas long-arm statute.[8] *Kelly*, 301 S.W.3d at 658. Therefore, to decide this issue, we must examine Savanna's *pleadings* to determine whether Savanna met its burden. *Id.*

We note that some of the crucial allegations upon which Savanna relies to support its jurisdictional argument were not asserted in either its original or amended pleadings. *See id.* While we have not previously considered this issue, and although

---

[8]As we have said, Savanna's claim against Fuchs was for forfeiture liability under Sections 171.252 and 171.255 of the Tax Code. *See* TAX §§ 171.252, .255.

the Texas courts are divided on it, we find reason in our sister courts' interpretation of *Kelly*, namely: for purposes of appellate review, factual allegations to support the exercise of personal jurisdiction over a nonresident defendant *must* be alleged in the plaintiff's *pleadings*. *See id.*; *see also State v. Yelp, Inc.*, 725 S.W.3d 170, 178 (Tex. App.—15th Dist. 2025, pet. filed) (discussing the trend among intermediate courts and holding that it could not consider factual grounds for jurisdiction that are not asserted in the plaintiff's pleadings); *Saidara*, 633 S.W.3d at 129 ("[T]he allegations on which the plaintiff bases the exercise of jurisdiction over the defendant must be in the petition."); *but see Schain v. JR Land Investments, LLC*, No. 03-24-00569-CV, 2026 WL 1614154, at *1 n.3 (Tex. App.—Austin June 5, 2026, no pet. h.) (mem. op.) (refusing to decide whether appellate review of the allegations raised by the plaintiff in its special appearance response was proper under *Kelly* because even though the appellate court considered these allegations, the plaintiff did not prevail).

Rule 120a of Texas Rules of Civil Procedure permits a nonresident defendant to specially appear for the purpose of challenging the trial court's exercise of personal jurisdiction over her. *See* TEX. R. CIV. P. 120a(1); *LG Chem Am., Inc. v. Morgan*, 670 S.W.3d 341, 346 (Tex. 2023). Under this rule, courts must determine the propriety of a special appearance based on "the pleadings, any stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes, and any oral testimony." TEX. R. CIV. P. 120a(3); *Yelp*, 725 S.W.3d at 177. Procedurally, because "[t]he plaintiff bears the initial burden to plead sufficient allegations to bring the nonresident defendant within the reach of the long-arm statute," *Morgan*, 670 S.W.3d at 346, the plaintiff's *pleadings* set the boundaries for what evidence and arguments may be presented and considered to either support or negate personal jurisdiction. *Yelp*, 725 S.W.3d at 178. The "additional evidence [that is offered in a *response* to a special appearance] merely supports or undermines the allegations in the pleadings." *Yelp*,

725 S.W.3d at 178 (quoting *Kelly*, 301 S.W.3d at 658 n.4) (emphasis added). If the evidence offered by the plaintiff is not within the scope of its pleadings, then "the plaintiff should amend [its] pleading to include the necessary factual allegations." *Id.* at 178 (quoting *Kelly*, 301 S.W.3d at 659). In this instance, Savanna did not.

We agree with our sister courts' interpretation of *Kelly* and conclude that factual allegations that would support the exercise of personal jurisdiction over a nonresident defendant *must* be asserted in the plaintiff's *pleadings*. Thus, a party who challenges a special appearance must comply with this pleading requirement; simply raising factual allegations in a *response* to a special appearance is insufficient. *See e.g.*, *Yelp*, 725 S.W.3d at 178 (collecting cases); *Saidara*, 633 S.W.3d at 129; *Dignity Gold, LLC and Dignity Corp., v. Ilmarin Group, LLC, Nat'l One Fin. Servs., Inc., BBC KQK Trust, and Fifth Dimension Consultants, LLC*, No. 05-25-00134-CV, 2026 WL 1831895, at *9 n.5 (Tex. App.—Dallas June 24, 2026, no pet. h.) (mem. op.) (citing *MPI Indus. Carolinas, LLC v. CTE Networks, LLC*, No. 05-24-00560-CV, 2025 WL 777337, at *10 (Tex. App.—Dallas Mar. 11, 2025, no pet.) (mem. op.)).

Three factors are considered in determining whether a nonresident defendant has purposefully availed herself of the privilege and benefits of conducting activities in Texas. *Moncrief*, 414 S.W.3d at 151; *Moki Mac*, 221 S.W.3d at 575 (citing *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784–85 (Tex. 2005)). "First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person." *Moncrief*, 414 S.W.3d at 151 (quoting *Retamco Operating Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338–39 (Tex. 2009)). "Second, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated." *Id.*; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 & n.18 (1985). Third, the "defendant must seek some benefit, advantage or profit by availing [herself] of the [forum's] jurisdiction." *Moki Mac*,

221 S.W.3d at 575 (quoting *Michiana*, 168 S.W.3d at 785) (internal quotation marks omitted).

Savanna's pleadings only asserted the following jurisdictional allegations against Fuchs, some of which are general statements: (1) she purposefully availed herself of the privilege of conducting activities in Texas, and Savanna's claims against her arise out of or relate to those contacts; (2) she was involved in the preparation, approval, execution, and subsequent breach of the Forbearance Agreement; (3) she consented to personal jurisdiction in Texas under the Tax Code, was responsible for the day-to-day operations of Ruckus Operating and Ruckus Resources, and knew or should have known that those entities' corporate privileges were forfeited when the Forbearance Agreement was signed; (4) Ruckus Operating and Ruckus Resources were parties to the Forbearance Agreement; (5) she was at all relevant times an affiliate or agent of Ruckus Resources and Ruckus Operating and was thus bound by the Forbearance Agreement's forum-selection clause; and (6) she was the president of Ruckus Resources and Ruckus Operating when both entities signed the Forbearance Agreement.

Despite the above, Savanna did not assert any allegations in its pleadings that would sufficiently establish specific, personal jurisdiction over Fuchs in Texas. Importantly, Savanna failed to allege that: (1) Fuchs was personally doing business in Texas during the time that either Ruckus Energy's corporate privileges were forfeited or when the Forbearance Agreement was negotiated or signed; (2) Fuchs was an officer or owner of Ruckus Holdings; or (3) Ruckus Holdings was an "alter ego" of Fuchs. *See Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 67 (Tex. 2016) ("[T]he relevant contacts are those of the defendant, and the unilateral activity of another person or a third party is not pertinent."); *BMC Software*, 83 S.W.3d at 798–99; *see also Momentum Eng'g, LLC v. Tabler*, No. 14-18-00002-CV, 2018 WL 4037411, at *5 (Tex. App.—Houston [14th Dist.] Aug. 23, 2018, pet. denied);

*ACS Partners, LLC v. Gross*, No. 01-11-00245-CV, 2012 WL 1655547, at *3 (Tex. App.—Houston [1st Dist.] May 4, 2012, no pet.) (mem. op.) (holding that the plaintiff failed to plead a valid basis for personal jurisdiction under the long-arm statute where his pleadings only alleged that the corporate officer and corporation "do business in Texas," and that the company's jurisdictional contacts were not imputable to the corporate officer after the corporation entered forfeiture).

Savanna acknowledged in its pleadings that Fuchs was a resident of New York and an officer or agent of Ruckus Resources and Ruckus Operating. Nevertheless, Savanna merely alleged in its pleadings that Fuchs was "involved in the preparation, approval, execution, and subsequent breach of the Forbearance Agreement" without explaining how Fuchs's limited involvement with the Forbearance Agreement—signing it in a representative capacity—in any way caused its breach or was related to her personal contacts with Texas. Nor did Savanna allege that Fuchs signed the agreement in her individual capacity, the only capacity in which Savanna sued her. *See Leesboro Corp. v. Hendrickson*, 322 S.W.3d 922, 929 (Tex. App.—Austin 2010, no pet.) (allegations that an owner and manager of an entity engaged in "general business contacts" in Texas for the entity provided no basis for asserting specific jurisdiction over the manager because they concerned the entity's contacts with Texas, not the manager's individual contacts); *ACS Partners*, 2012 WL 1655547, at *3.

To subject a nonresident to the jurisdiction of the Texas courts, the nonresident's contacts must be more than "random, fortuitous, or attenuated." *Moki Mac*, 221 S.W.3d at 575. Here, the single, isolated act of signing the Forbearance Agreement by Fuchs, albeit in a representative capacity, the alleged breach of which is the focus of the claim that Savanna has asserted against Fuchs in this case, is not enough to subject her to specific, personal jurisdiction in Texas. Therefore, we conclude that Savanna did not to meet its jurisdictional burden because it failed to

allege in its pleadings, and Fuchs sufficiently negated, that she committed the complained-of acts in her individual capacity or in a manner that would constitute "doing business" in Texas.

## 2. *Fuchs's Special Appearance and Declaration*

Because Savanna failed to plead facts to bring Fuchs within the scope and reach of the Texas long-arm statute, to negate personal jurisdiction, Fuchs was only required to prove that she does not reside in Texas. *Kelly*, 301 S.W.3d at 658–59. And she did. A nonresident defendant can meet this burden by filing an affidavit or sworn declaration attesting to this fact. *See Touradji v. Beach Cap. P'ship, L.P.*, 316 S.W.3d 15, 25 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (citing *Kelly*, 301 S.W.3d at 659). Fuchs's amended special appearance was supported by her sworn declaration, in which she stated that she: (1) was a resident of New York; (2) did not personally own property in Texas; (3) did not maintain an office or bank account in Texas; and (4) had not personally conducted business in Texas. Thus, given Savanna's failure to allege sufficient jurisdictional facts that are relevant to the Texas long-arm statute's requirements and the claim that it has asserted against Fuchs, we conclude that Fuchs met her burden to negate specific, personal jurisdiction. *See Kelly*, 301 S.W.3d at 658–59; *Touradji*, 316 S.W.3d at 25.

## 3. *The Tax Code and Purposeful Availment*

Finally, Savanna argues that the Tax Code's forfeiture provisions under Section 171.255(a) operate as a consent by Fuchs to jurisdiction in Texas. Savanna relies on our decision in *Laborde* to support its argument; however, Savanna's reliance on Section 171.255(a) and our holding in *Laborde* is misplaced. *See* 193 S.W.3d at 644 (rejecting the argument that Section 171.255, by itself, supported personal jurisdiction over a corporate shareholder and director).

In *Laborde*, we considered whether a Texas court may exercise jurisdiction over a nonresident sole shareholder and sole director of a corporation that failed to

16

pay franchise taxes. 193 S.W.3d at 640. We held that while Section 171.255(a) provides *notice* to directors and officers of corporations that they are personally liable for the debts covered by the statute, it does not justify the conclusion that nonresident officers could reasonably anticipate being haled into a Texas court. *Id.* Since then, other courts have also concluded that Section 171.255 does not create an independent basis for asserting personal jurisdiction over a nonresident officer or director of an entity that forfeited its corporate privileges in Texas. *See Schain*, 2026 WL 1614154, at \*7; *ACS Partners*, 2012 WL 1655547, at \*4 ("Given the absence of any mention of jurisdiction in Section 171.255, the important distinction between liability and personal jurisdiction, and the rule that Section 171.255 should be 'strictly construed' . . . [and] does not provide an independent basis for personal jurisdiction[.]").

Irrespective of Savanna's erroneous reliance on *Laborde*, Savanna was nonetheless required to satisfy the minimum contacts analysis and show that Fuchs "purposefully availed" herself of the privilege of conducting activities within Texas and, thus, invoked the benefits and protections of our laws. *Burger King*, 471 U.S. at 475. "Purposeful availment" is the predicate to justify a conclusion that Fuchs could have reasonably anticipated being haled into a Texas court. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Coleman*, 83 S.W.3d at 806.

As has been said, for a Texas court to exercise specific jurisdiction over a nonresident defendant, the defendant's contacts with Texas must be purposeful, and the asserted cause of action must have arisen from or be related to those contacts. *Moki Mac*, 221 S.W.3d at 575–76; *Guardian Royal*, 815 S.W.2d at 227–28. Contrary to Savanna's contentions, there is no evidence that Fuchs "purposefully availed" herself of the benefits and protections of our laws. *Laborde*, 193 S.W.3d at 644. Moreover, even though Savanna alleged in its pleadings that Fuchs was

bound by the forum-selection clause in the Forbearance Agreement, this allegation alone does not support a finding of specific jurisdiction over Fuchs because—as Savanna admitted in its pleadings—she was not a party to the agreement but rather was only an agent of Ruckus Resources and Ruckus Operating for purposes of that transaction. Consequently, Fuchs did not invoke the benefits and protections of the laws of Texas merely by signing this agreement in her representative capacity. *See* CIV. PRAC. & REM. § 17.042(1); *Rieder v. Woods*, 603 S.W.3d 86, 101 (Tex. 2020) (one who acts in a representative capacity cannot be subject to personal jurisdiction in Texas based solely on their role in negotiating or signing an agreement on behalf of a corporate entity); *Leonard v. Salinas Concrete, LP*, 470 S.W.3d 178, 190 (Tex. App.—Dallas 2015, no pet.) (a Texas choice-of-law provision in a contract, alone, does not necessarily establish the requisite minimum contacts with Texas); *Prochaska v. Barnes*, No. 01-15-01044-CV, 2016 WL 4055642, at *4 (Tex. App.— Houston [1st Dist.] July 28, 2016, no pet.) (mem. op.) (a Texas choice-of-law provision did not support the exercise of personal jurisdiction over an individual who (1) was not a party to the agreement, and (2) signed the agreement only in a representative capacity). Such is the case here.

In this instance, Fuchs's purported contacts with Texas fall short of what our law requires—the purposeful availment of the privilege of conducting business or other activities in Texas. Because Savanna's jurisdictional allegations (1) primarily concerned Ruckus Energy's contacts with Texas, not Fuchs's alleged contacts, and (2) did not establish Fuchs's presence in Texas at the relevant time, or that its cause of action against her—forfeiture liability—arose from any of her alleged contacts with Texas, we conclude that Savanna did not satisfy its burden to show that Fuchs is subject to specific, personal jurisdiction in Texas for the claim it has asserted against her in this case. *See Proppant Sols, LLC v. Delgado*, 471 S.W.3d 529, 541– 43 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (affirming the grant of a special

appearance for a nonresident who was alleged to be an officer and have a management role in a defendant entity); *Schain*, 2026 WL 1614154, at *7; *see also Schlais v. Valores Corporativos Softtek, S.A. de C.V.*, No. 03-11-00188-CV, 2012 WL 1499488, at *8 (Tex. App.—Austin Apr. 25, 2012, no pet.) (mem. op.) ("Stock ownership and the related right of control that stock ownership gives to stockholders are insufficient to destroy the distinctness of corporate entities for jurisdictional purposes." (quoting *Commonwealth Gen. Corp. v. York*, 177 S.W.3d 923, 925 (Tex. 2005))).

## IV. *This Court's Ruling*

For the reasons discussed above, we conclude that the trial court erred when it denied Fuchs's special appearance. Accordingly, we sustain Fuchs's first issue on appeal. As such, our disposition does not require that we address the remaining issues raised by Fuchs. *See* TEX. R. APP. P. 47.1.

Because Fuchs's contacts with Texas are insufficient to support the exercise of specific, personal jurisdiction over her in Texas for the claim that Savanna has asserted against her in this case, we reverse the trial court's order denying Fuchs's special appearance, and we render judgment dismissing Savanna's claims against her for want of personal jurisdiction.

W. STACY TROTTER
JUSTICE

July 30, 2026

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.